UNITED STATES DISTRICT COURT
FOR DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROBERT A. DOANE, | ) |
|  | ) |
| Plaintiff | ) Civil Action No. |
|  | ) |
| v. | ) |
|  | ) |
| PORCH.COM, INC. | ) |
|  | ) |
| Defendant | ) |

# COMPLAINT
### (With Jury Demand Endorsed Hereon)

Now comes Plaintiff, **ROBERT A. DOANE**, by and through undersigned counsel, and for his Complaint against Defendant **PORCH.COM, INC**. states and avers as follows:

## INTRODUCTION

Plaintiff, Robert A. Doane brings this complaint against Defendant Porch.com, Inc. seeking actual, statutory, and punitive damages for knowing and willful violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq. ("TCPA"), the Massachusetts Telephone Solicitation Act, G.L. c. 159C, et seq. ("MTSA"), the Massachusetts Wiretap Act, G.L. c. 272 § 99 et seq. ("MWTA"), invasion of privacy and intrusion upon seclusion, and violations of the Massachusetts Consumer Protection Act, G.L. c. 93A, et seq. ("MCPA").

## PARTIES

1. Plaintiff, Robert A. Doane ("Doane" or "Plaintiff"), is, and was at all relevant times, a citizen of Commonwealth of Massachusetts domiciled at 21 New Lane, West Tisbury, Massachusetts 01880.

2. Defendant, Porch.com, Inc. ("Porch" or "Defendant"), is a Delaware corporation, with its principal place of business located at 2200 1st Ave. S. Seattle, Washington, 98134.

3. Whenever in this complaint it is alleged that the Defendant committed any act or omission, it is meant that this Defendant's officers, directors, agents, servants, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, agents, servants, or employees.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action involves violations of the TCPA. *Mims v. Arrow Fin. Servs., LLC*., 132 S. Ct. 740 (2012). This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law causes of action.

5. This Court has personal jurisdiction over Defendant because Defendant conducts significant business in this District and has continuous and systematic contacts with this District through its telemarketing efforts that specifically target consumers in this District. Further wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this district.

## FACTUAL ALLEGATIONS

**A.     Porch's Operations**

7.  At all relevant times, Porch has claimed that it provides two forms of home repair and/or home improvement services to homeowners. First, Porch provides "Porch Services" where Porch manages the home repair/improvement project on behalf of the homeowners. In the alternative, Porch "matches" homeowners with contractors in its "Porch Pro Network[1]" and the homeowner thereafter handles "all the vetting, estimating and scheduling."

8.  At all relevant times, in order to generate sales for "Porch Services" and the "Porch Pro Network", Defendant utilized agent overseas telemarketers (the "Telemarketers") to repeatedly, harassingly, deceptively and illegally place hundreds of thousands of calls to Massachusetts consumers utilizing caller-ID spoofing (a process that displaces the actual caller identification with a fake caller identification) and automatic telephone dialing systems ("ATDS").

9.  At no point have the Telemarketers been registered with the Massachusetts Office of Consumer Affairs and Business Regulations as required by 201 C.M.R. § 12.04.

10. At all times relevant, including but not limited to August, 2017, Defendant had control over the Telemarketers' actions on its behalf. For example:

    a.  Defendant limited the type of consumers the Telemarketers could solicit.

    b.  Defendant restricted the geographical area within which the Telemarketers could solicit business.

    c.  Defendant provided the scripts and sales pitches for the Telemarketers.

    d.  Defendant instructed the Telemarketers with respect to the volume of telemarketing calls and the methods to be utilized.

---

[1] According to Porch the "Porch Pro Network" consists of over 300,000 home professionals.

  e. Defendant had day-to-day control over the Telemarketers' actions, including the ability to prohibit the Telemarketers from using an ATDS, illegal spoofing and other illegal methods to contact potential customers.

11. Although Defendant either knew or should have known of the provisions of the TCPA and MTSA, Defendant, at all relevant times, directed its Telemarketers to generate leads by using methods that violate the substantive provisions of the TCPA and MTSA.

12. The calls placed to Plaintiff complained of herein were within the scope of the Telemarketers' job duties and the actual or apparent authority the Defendant provided to the Telemarketers.

13. At all relevant times, the Defendant profited from the Telemarketers' aforementioned efforts and ratified the actions of the Telemarketers by knowingly accepting the benefits of the Telemarketers' illegal activities.

  **B. Illegal and Harassing Calls to Plaintiff**

14. Plaintiff is an individual who suffers from chronic pain and a sleep disorder, and often sleeps during the day.  Plaintiff is also the trustee of several trusts, is the primary caretaker and power of attorney for his two elderly parents, and stepmother suffering from dementia.  In these capacities, Plaintiff is required to keep his cellphone on his person at all times so he can attend to the needs of the trusts and direct the care of his family members.

15. At all times relevant, Plaintiff's cell phone number, 781-245-6577 ("Cell Phone")—which has been his home number since childhood—has been registered to a "do not call list" maintained by the Federal Trade Commission ("FTC") and the Massachusetts Do Not Call registry as Plaintiff does not wish to be disturbed and harassed by telemarketers.

16. Plaintiff's family and friends associate Plaintiff with his Cell Phone and Plaintiff's elderly parents, who can easily remember this number, rely on it to contact Plaintiff on daily basis.

17. In the weeks leading up to August 22, 2017, Plaintiff received, without his prior express written consent, not less than sixteen telephone calls ("Unsolicited Calls") to his Cell Phone, using "spoofing" and an ATDS, from the Telemarketers attempting to solicit sales for window and exterior remodeling projects.

18. When Plaintiff would receive the Unsolicited Calls, he would hear a pause and a click and then an agent with a foreign accent who claimed to be associated with "National Home Improvements" would come on the line and begin to attempt to solicit sales for home improvement projects.

19. Despite Plaintiff's requests that the calls stop, the Telemarketers continued to call incessantly often waking Plaintiff from his sleep, disrupting his concentration, causing him to lose focus on this tasks and causing him aggravation and annoyance.

20. At no time during any of the Unsolicited Calls was it disclosed that the call was being recorded, nor was Plaintiff aware the calls were being recorded.

21. Following an Unsolicited Call, Plaintiff would attempt to call the number back that appeared on his caller-ID. These attempts were unsuccessful as the numbers that appeared on his caller-ID were spoofed and not working numbers.

22. In order to identify those responsible and to get the calls to stop, Plaintiff was compelled to feign interest in what was being offered.

23. On August 22, 2017 at 7:52 PM, Plaintiff received an Unsolicited Call appearing on his caller identification as "360-452-3065"—a number from which Plaintiff had previously received at least

six (6) of the Unsolicited Calls. As before, there was a delay and click before an agent came on the line and made the same sales pitch as in prior Unsolicited Calls. On this call, the agent, who identified himself as with "National Home Improvements," attempted to solicit the sale of home improvement related services. The agent claimed that Plaintiff's house "was selected to receive a free no-obligation pricing estimate for [Plaintiff's] home improvements of the next six months." The agent then asked if "windows, siding, roofing, bathroom, kitchen, [or] air conditioning was needed."

24. As the call on August 22, 2017 continued, after the agent made his initial sales pitch, Plaintiff asked the agent how the agent got Plaintiff's Cell Phone number. After repeating this question, the agent stated—without answering the question—"actually sir, we have a nationwide group, and we are doing a survey in your area, and we are reaching out to local homeowners, and we are giving free estimates for home improvements which is valid for the next six months." The agent then asked again what work needed to be done.

25. In order to attempt to confirm who was behind the Unsolicited Calls and to get them to stop, Plaintiff played along and indicated to the agent that a new roof might be needed. After giving the agent some specifics in regards to Plaintiff's roof, the agent attempted to confirm Plaintiff's name and address which he had already seemed to know. When Plaintiff asked how the agent obtained this information, the agent attempted to avoid the question and informed Plaintiff, as he had done previously, that "we have a nationwide group, we are reaching the homeowners, we have some information from your area."

26. In addition to attempting to confirm Plaintiff's name and address, the agent read a fictitious AOL email address to Plaintiff in an attempt to solicit Plaintiff's actual email address which the agent did not have. Plaintiff did not provide his actual email address to the agent as it was clear to Plaintiff that the agent was attempting to falsify consent to be called.

27.     The agent was then asked if the agent needed to be reached whether he could be called back at the 360-452-3065 number. The agent relied, "yes sir". The agent then asked a few more questions and terminated the call.

28.     Following the August 22, 2017 call, Plaintiff attempted to call back 360-452-3065 and determined that it was not a working number.

29.     In the days following August 22, 2017, Plaintiff received, without his prior written consent, several calls from various companies soliciting home improvement services. These parties indicated that they were responding to a request made by Plaintiff online. Plaintiff informed these parties that Plaintiff had made no such request and asked where the parties had obtained his contact information. In response, each caller stated that the information was provided by Porch. These parties further indicated that they had been informed by Porch that Plaintiff's email was Robert.doane@gmail.com, which was not Plaintiff's email address. One of these contractors likewise provided a text message with a link related to the lead which lead to a Porch.com webpage.

30.     Following the aforementioned calls, Plaintiff learned that the Telemarketers had recorded conversations with Plaintiff without his knowledge or consent. These recordings were thereafter provided to Porch and utilized by Porch and Porch's counsel—likewise without Plaintiff's consent.

31.     As a direct and proximate result of Defendant's aforementioned illegal telemarketing activities, Plaintiff has suffered actual harm, including but not limited to, invasion of privacy, loss of concentration, loss of productivity, loss of sleep, annoyance, aggravation, emotional distress, diminished value and utility of his cell phone and subscription services, wear and tear to his cell phone, the loss of battery charge and battery life, and per-kilowatt electricity cost required to recharge his cellular telephone as a result of increased usage of his cell phone services.

32. In addition to the foregoing, as a direct and proximate result of Defendant's aforementioned illegal telemarketing activities, Plaintiff was forced to identify those responsible to try and get the illegal activities to cease, and in the process of doing so incurred expense in time, materials, and use of equipment.

### C. M.G.L. c. 93A demand

33. On August 27, 2017, Plaintiff sent Porch and its officers a demand letter pursuant to M.G.L. c. 93A ("Demand Letter") via email demanding their do-not-call policy, the name of the agents operating on Porch's behalf, if any, and demanding that the harassing calls immediately stop. The Demand Letter also demanded actual and statutory damages.

34. Despite Plaintiff's Demand Letter making a specific request for Porch's do-not-call policy, Porch did not provided it as required by the TCPA, and failed to respond to the Demand Letter with a reasonable settlement offer.

## COUNT I
### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A))

35. The allegations of paragraphs one (1) through thirty-four (34) of this Complaint are realleged and incorporated by reference.

36. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

37. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

38. The TCPA defines ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

39. According to findings of the Federal Communication Commission ("FCC"), the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

40. The FCC requires prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. In *the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 ¶ 33 (2012).

41. The FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 92-90, Memorandum and Order, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

42. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013) ("May 2013 FCC Ruling").

43. Porch was legally responsible for ensuring that the Telemarketers complied with the TCPA even if Porch did not make the calls itself.

44.     Porch, by and through its agent Telemarketers, violated 47 U.S.C. §227(b)(1)(A)(iii) by placing not less than sixteen (16) telemarketing calls to Plaintiff's Cell Phone using an automatic telephone dialing system ("ATDS"), without Plaintiff's prior express written consent.

45.     Pursuant to 47 U.S.C. § 227(b)(3)(B), Porch is liable to Plaintiff for a minimum of $500 per violation, or not less than $8,000 for the not less than sixteen (16) violations hereunder.

46.     Pursuant to 47 U.S.C. § 227(b)(3)(C), willful or knowing violations of the TCPA trigger treble damages.

47.     The conduct in violation of 47 U.S.C. §227(b)(1)(A)(iii) was willful and knowing.

48.     Plaintiff is entitled to have his single damages of $8,000.00, trebled to $24,000.00, for the aforesaid willful and knowing violations of the TCPA.

## COUNT II
### (Violations of the Telephone Consumer Protection Act, §227(c)(1) to (4))

49.     The allegations of paragraphs one (1) through forty-eight (48) of this Complaint are realleged and incorporated by reference.

50.     A private right of action exists pursuant to 47 U.S.C. § 227(c)(5) for violations of the regulations promulgated pursuant to the TCPA for the protection of telephone subscriber privacy rights.

51.     47 C.F.R. § 64.1200(c) and (d) sets forth certain procedures with which a telemarketer must comply prior to the initiation of a telemarketing call.

52.     Porch did directly, and through its agent Telemarketers, violate C.F.R. § 64.1200 et seq. in the following respects:

    A.     By failing to ensure that Porch and the Telemarketers maintained a do-not-call list in violation of 47 C.F.R. § 64.1200(d)(1);

B. By failing to provide Plaintiff, upon his demand, Porch's and the Telemarketers' do-not-call policy in violation of 47 C.F.R. § 64.1200(d)(1);

C. By failing to ensure that its personnel and the personnel of the Telemarketers were informed and trained in the existence and use of the do-not-call list in violation of 47 C.F.R. § 64.1200(d)(2);

D. By failing to provide to Plaintiff the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and the telephone number or address at which the person or entity may be contacted in violation of 47 C.F.R. § 64.1200(d)(4); and

E. By engaging in and causing a pattern or practice of initiating telephone solicitations to Plaintiff's Cell Phone without Plaintiff's express written consent on at least sixteen (16) occasions in violation of 47 U.S.C. § 64.1200(c)(2).

53. Pursuant to 47 U.S.C.A. § 227(c)(5) and the regulations promulgated thereunder, Porch is liable to Plaintiff for a minimum of $500 per violation of the TCPA, or not less than $8,000 for the not less than sixteen (16) violations hereof.

54. Porch's aforesaid conduct in violation of 47 U.S.C.A. § 227(c)(5) and the regulation promulgated thereunder, was willful and knowing.

55. Plaintiff is entitled under this count to have his single damages of $8,000.00, trebled to $24,000.00, for these willful and knowing violations.

## COUNT III
**Violations of the Massachusetts Telemarketing Solicitation Act, G.L. c. 159C**

56. The allegations of paragraphs one (1) through fifty-five (55) of this Complaint are realleged and incorporated by reference.

57. The Massachusetts Telephone Solicitations Act, M.G.L. c. 159C et seq., (the "MTSA") and the regulations promulgated under the authority of the MTSA impose strict pre-conditions,

limitations and restrictions on unsolicited telephonic sales calls made to Massachusetts residents, and any such calls not in compliance with any of these pre-conditions, limitations and restrictions are prohibited.

58. Telephone solicitors engaging in unsolicited telephone sales calls to Massachusetts consumers are required to "properly register on an annual basis" with the Massachusetts Office of Consumer Affairs and Business Regulations (the "OCABR"). 201 C.M.R. § 12.04.

59. At all times relevant, including but not limited to August, 2017, neither Porch nor the Telemarketers were registered with the OCABR, as required by 201 C.M.R. § 12.04.

60. By failing to comply with the registration requirement, Porch and its agent Telemarketers failed satisfy a basic, threshold requirement for conducting solicitations in Massachusetts and, thus violated the MTSA.

61. Porch directly and through its agent Telemarketers, likewise violated the MTSA in connection with the calls complained-of herein in the following respects:

    a. By making unsolicited sales calls to Plaintiff without prior express consent or permission in violation of M.G.L. c. 159C, § 1;

    b. By calling Plaintiff after Plaintiff expressed his desire not to receive further calls, in violation of M.G.L. c. 159C, § 1;

    c. By calling Plaintiff on his Cell Phone while he was registered with the Massachusetts Do Not Call registry in violation of M.G.L. c. 159C, § 3 and 201 C.M.R. § 12.02(1);

    d. By making calls to Plaintiff without proper disclosure concerning the identity of the telemarketers and the ultimate seller in violation of M.G.L. c. 159C, § 5A and 201 C.M.R. § 12.02(7);

  e. By failing to keep and consult the Massachusetts Do Not Call registry prior to calling Plaintiff in violation of 201 C.M.R., §§ 12.04(3) and 12.02(6); and

  f. By using falsified and displaced caller identification in connection with the Unsolicited Calls to Plaintiff in order to circumvent the use of caller identification services or devices in violation of M.G.L. c. 159C, § 4 and 201 C.M.R., § 12.02(5).

62. The MTSA provides that "[a] person that receives more than 1 unsolicited telephonic sales call within a 12-month period by or on behalf of the same person or entity in violation of [c. 159C] may … bring an action to recover for actual monetary loss from such knowing violation or to receive not more than $5,000 in damages for such knowing violation, whichever is greater …"

63. As a direct and proximate result of Porch's violations of the MTSA and the violations of the Telemarketers for which Porch is vicariously liable, Plaintiff has suffered actual damage as set forth in paragraphs thirty-one (31) and thirty-two (32) above and other like and serious harm in an amount to be established at trial.

### COUNT IV
### Violations of the Massachusetts Wiretap Act, G.L. c. 272 § 99 et seq.

64. The allegations of paragraphs one (1) through sixty-three (63) of this Complaint are realleged and incorporated by reference.

65. The Massachusetts Wiretap Act, G.L. c. 272, § 99 et seq. ("MWTA"), makes interception of wire and oral communications unlawful unless both parties consent to the recording. Moreover, it is unlawful to use such recording.

66. For the purposes of the statute, the term "interception" means "to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral

communication through the use of any interception devise by any person other than a person given prior authority by all parties to such communication….” G.L. c. 272, § 99(B)(4).

67. An "interception device" means for the purposes of the statute, "any device or apparatus which is capable of transmitting, receiving, amplifying or recording a wire or oral communication…. G.L. c. 272, §99(B)(3).

68. The MWTA provides that "any person who willfully commits an interception, attempts to commit an interception, or procures any other to commit an interception or to attempt to commit an interception of any wire or oral communications shall be fined not more than ten thousand dollars, or imprisoned in the state prison for more than five years."

69. It is illegal under the MWTA to make use of the contents of an intercepted communication. See G.L. c. 272, § 99(3)(a), which provides that any person who "willfully uses or attempts to use the contents of any wire or oral communication, knowing that the information was obtained through an interception, shall be guilty of a misdemeanor punishable by imprisonment in a jail or a house of correction for not more than two years or by a fine of not more than five thousand dollars."

70. The Massachusetts Supreme Judicial Court declared that it was the intent of the legislature to "strictly" prohibit all secret audio recordings when made without the knowledge or permission of all parties. *Commonwealth v. Hyde*, 434 Mass. 594, 595 (Mass. 2011).

71. The "civil remedy" provisions of G.L. c. 272, § 99 provides the party subject to a secret recording without his or her knowledge or permission with a cause of action for statutory and punitive damages, an invasion of privacy claim, court costs, and attorney fees.  Specifically, the statute reads as follows:

> Any aggrieved person whose oral or wire communications were intercepted, disclosed or used except as permitted or authorized by this section or whose personal or property interests or privacy were violated by means of an interception except as permitted or authorized by this section shall have a civil cause of action against any person who so

intercepts, discloses or uses such communications or who so violates his personal, property or privacy interest, and shall be entitled to recover from any such person: (1) actual damages but not less than liquidated damages computed at the rate of $100 per day for each day of violation or $1000, whichever is higher; (2) punitive damages; and (3) a reasonable attorney's fee and other litigation disbursements reasonably incurred.

G.L. c. 272, § 99 Q.

72. Porch directly, through its agent Telemarketers, willfully, knowingly and intentionally violated the MWTA by secretly recording Plaintiff without his prior knowledge or consent and utilizing these recordings for their own purposes.

73. Plaintiff is entitled to statutory damages under the MWTA of $100 per day or not less than $1,000, whichever is higher and entitled to punitive damages under the provisions of the MWTA, his attorney fees, and costs.

## COUNT V
## Invasion of Privacy by Intrusion Upon Seclusion

74. The allegations of paragraphs one (1) through seventy-three (73) of this Complaint are realleged and incorporated by reference.

75. The Massachusetts Privacy Act, M.G.L. c. 214, § 1B, provides, in relevant part, "a person shall have a right against unreasonable, substantial or serious interference with his privacy."

76. A plaintiff may support a claim of invasion of privacy by showing that a defendant has intruded unreasonably upon the plaintiff's solitude or seclusion.

77. Porch directly, and through its agent Telemarketers, knowingly, willfully, intentionally, maliciously and without regard for the rights of Plaintiff, intruded upon Plaintiff's right to privacy by continually harassing Plaintiff with repeated calls as set forth above.

78. The Unsolicited calls to Plaintiff were so intrusive as to be considered "hounding the plaintiff" and "a substantial burden to his existence," thus satisfying the Restatement of Torts, Second, § 652(b) requirement for an invasion of privacy.

79.     Porch's conduct and the conduct of their agent Telemarketers resulted in multiple invasions of Plaintiff's privacy in such a manner as would be considered highly offensive to a reasonable person.

80.     As a direct and proximate result of the invasion of privacy of Plaintiff by Porch and its agent Telemarketers , Plaintiff has suffered the harm set forth in paragraphs thirty-one (31) and thirty-two (32) above and other like and serious harm in an amount to be established at trial.

81.     All of the acts of complained of were committed with malice, intent, wantonness and recklessness, and as such, Defendant is subject to punitive damages.

### COUNT VI
### Violations of the Massachusetts Consumer Protection Act, G.L. c. 93A
### And Request for Injunctive Relief

82.     The allegations of paragraphs one (1) through one hundred eighty-one (81) of this Complaint are realleged and incorporated by reference.

83.     At all times relevant, Defendant was engaged in trade or commerce within the meaning of M.G.L. c. 93A §2.

84.     940 C.M.R. § 3.16(4) provides that an act or practice violates M.G.L. c. 93A, §2 "if it violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other federal consumer protection statutes within the purview of M.G.L. c. 93A, s. 2".

85.     The TCPA was promulgated for the protection of consumers.

86.     940 C.M.R. §3.16(3) provides that an act or practice violates M.G.L. c. 93A, §2 "if it fails to comply with existing statutes, rules, regulations, or laws, meant for the protection of the public's health, safety or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide consumers of this Commonwealth protection."

87.  The MTSA was promulgated by the Commonwealth for the protection of the consumers of the Commonwealth, including Plaintiff.

88.  Porch's and the Telemarketers' numerous violations of the TCPA and MTSA (and the regulations promulgated thereunder) constitute unfair and deceptive conduct in violation of M.G.L. c. 93A, § 2.

89.  Porch engaged in unfair and deceptive conduct, by knowingly and willfully contracting with Telemarketers, who Porch either knew or should have known utilized illegal practices and methods, in order to attempt to solicit Massachusetts consumers in violation of the TCPA and MTSA.

90.  Porch who chose to do business in Massachusetts, knew or should have known of the requirements and prohibitions of the TCPA and MTSA (and its underlying regulations) and the applicable provisions of the Massachusetts Privacy Act and Massachusetts common law. Accordingly, Porch's violations of M.G.L. c. 93A, § 2 were willful and knowing.

91.  Porch and its agent Telemarketers further engaged in unfair and deceptive conduct by repeatedly violating Plaintiff's right to privacy, selling his personal information without his knowledge or consent, tape recording conversations with Plaintiff without his knowledge or consent and fraudulently manufacturing an alleged "opt-in" in an attempt to provide justification for illegal actions complained of.

92.  As a direct and proximate result of the aforementioned violations of M.G.L. c. 93A Plaintiff has suffered the harm set forth in paragraphs thirty-one (31) and thirty-two (32) above and other like and serious harm in an amount to be established at trial.

93.  Plaintiff sent Porch a 30-day Massachusetts Consumer Protection Act, M.G.L. c. 93A Demand Letter, to which Porch failed to timely respond with a reasonable offer of settlement.

94. Plaintiff states upon information and belief that as of the filing of this Complaint, Defendant's unlawful conduct in violation of the TCPA, MTSA and Chapter 93A is continuing. Said conduct, including the unsolicited, harassing and unlawful calls, as alleged herein, will continue, and will inflict further damage on Plaintiff and Massachusetts consumers, unless and until this Court, or another court of competent jurisdiction, issues an order directing Defendant to cease and desist from said conduct.

95. Accordingly, while monetary damages may be sufficient to compensate Plaintiff and for past violations, injunctive relief is necessary in order to stop Defendant's unlawful course of conduct from continuing.

**WHEREFORE**, as to all Counts, the Plaintiff requests that this Court:

1. Enter judgment for the Plaintiff against the Defendant;

2. Award Plaintiff his actual, compensatory, punitive and special damages in an amount exceeding $150,000.00 to be determined at trial;

3. Find that the Defendant is vicariously liable for the actions and omissions of its agent Telemarketers complained of herein;

4. Find that the Defendant and its agent Telemarketers violated the MTSA, and award Plaintiff statutory damages of not less than $5,000.00 for each violation;

5. Find that Defendant and its agent Telemarketers' actions complained of were willful, knowing, intentional, unfair, and deceptive, in violation of M.G.L. c. 93A and award Plaintiff treble damages;

6. Award Plaintiff his reasonable costs, expert fees, attorney fees and expenses;

7. Issue a permanent injunction, enjoining Defendant from additional and continuing violations of the TCPA, MTSA, MWTA and Chapter 93A; and

8. Award Plaintiff pre-judgment interest and such other and further relief as Plaintiff may be entitled at law or in equity.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY OF ALL CLAIMS SO TRIABLE.**

ROBERT A. DOANE
By his attorney

/s/RICHARD B. REILING
RICHARD B. REILING, ESQ.
BBO # 629203
BOTTONE | REILING
63 Atlantic Ave., 3rd Floor
Boston, MA 02110
Phone:     (617) 412-4291
Facsimile: (617) 412-4406
richard@bottonereiling.com

Dated: August 24, 2020